UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA ANNE PALMA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>Defendant. | No.  2:15-cv-1736-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment.  For the reasons that follow, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

I.     BACKGROUND

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had been disabled since March 10, 2010.  Administrative Record ("AR") 180-192.  Her applications were denied initially and upon reconsideration.  *Id.* at 132-136, 142-147.  On November 4, 2013, a hearing was held before administrative law judge ("ALJ") David M. Blume.  *Id.* at 58-77.

1

Plaintiff was represented by counsel at the hearing, at which she and a vocational expert testified. *Id.*

On February 13, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1]  *Id*. at 20-34.  The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since March 10, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3. The claimant has the following severe impairments: paranoid schizophrenia and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to non-public simple, repetitive, tasks and only occasional interaction with coworkers and supervisors.

   * * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

   * * *

7. The claimant was born on February 6, 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.]FR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    * * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 22-33.

Plaintiff's request for Appeals Council review was denied on June 16, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

3

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred by (1) rejecting her treating and examining physicians' opinions without providing legally sufficient reasons, and (2) discounting her subjective complaints without providing clear and convincing reasons. ECF No. 10 at 18-34.

### A. The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff first argues that the ALJ erred in rejecting opinions form her treating and examining physicians. ECF No. 10 at 18-29. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a

1  medical opinion, in addition to considering its source, the court considers whether (1)
2  contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ
3  may reject an uncontradicted opinion of a treating or examining medical professional only for
4  "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a
5  treating or examining medical professional may be rejected for "specific and legitimate" reasons
6  that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion
7  generally is accorded superior weight, if it is contradicted by a supported examining
8  professional's opinion (e.g., supported by different independent clinical findings), the ALJ may
9  resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes
10 v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies
11 on the same clinical findings as a treating physician, but differs only in his or her conclusions, the
12 conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d
13 625, 632 (9th Cir. 2007).

14      In May, 2012, plaintiff began receiving treatment from psychiatrist Dr. Arturo Villamor.
15 AR 485. Dr. Villamor diagnosed plaintiff with paranoid schizophrenia, and indicated that
16 plaintiff's prognosis was guarded to poor. *Id*. The clinical findings supporting the diagnosis
17 included poor memory, sleep disturbance, personality change, mood disturbance, delusions or
18 hallucinations, anhedonia, paranoia, decreased energy, social withdrawal, and generalized
19 persistent anxiety. *Id*. at 486. Plaintiff's symptoms included hearing voices, insomnia, command
20 hallucinations, anxiety, and paranoia, with auditory hallucinations. *Id*. at 484.

21      It was Dr. Villamor's opinion that plaintiff was moderately limited in remembering
22 locations and work-like procedures; understanding, remembering, and carrying out one or two
23 step instructions; sustaining ordinary routine without supervision; making simple work related
24 decisions; completing a normal workday without interruption from psychologically based
25 symptoms and performing at a consistent pace without an unreasonable number of breaks; and
26 setting realistic goals and making plans independently. *Id*. at 488-490. He further opined that
27 plaintiff was markedly limited in understanding, remembering and carrying out detailed
28 instructions; maintaining attention and concentration for extended periods; performing activities

1  within a schedule, maintaining regular attendance, and being punctual within customary
2  tolerance; interacting appropriately with the general public; getting along with co-workers
3  without distracting them or exhibiting behavioral extremes; and being aware of normal hazards
4  and taking appropriate precautions. *Id*.  It was also Dr. Villamor's opinion that plaintiff's
5  symptoms would produce good days and bad days; that she was incapable of even low stress
6  work; and that her symptoms would cause her to be absent from work about once a month. *Id*. at
7  491-492.  He further stated that plaintiff would be able to manage benefits in her own best
8  interest. *Id*. at 492.

9  Plaintiff underwent a psychological evaluation by Dr. Phillip MacFarland, Ph.D. *Id*. at
10 580-592.  Dr. MacFarland diagnosed plaintiff with Schizoaffective Disorder. *Id*. at 582.  He
11 opined that plaintiff was moderately limited in understanding, remember, and carrying out one or
12 two step instructions; making simple work related decisions; and maintaining socially appropriate
13 behavior.  It was also his opinion that plaintiff was markedly impaired in remembering locations
14 and work-like procedures; understanding, remembering, and carryout detailed instructions;
15 maintaining attention and concentration for extended periods; performing activities within a
16 schedule, maintaining regular attendance, and being punctual within customary tolerance;
17 sustaining ordinary routine without supervision; working in coordination with others; completing
18 a normal workday without interruption from psychologically based symptoms and to perform at a
19 consistent pace without an unreasonable number of breaks; interacting appropriately with the
20 general public; accepting instructions and responding appropriately to criticism from supervisors;
21 getting along with co-workers without distracting them; responding appropriately to changes in
22 the work setting; being aware of normal work hazards and taking appropriate precautions.

23 The record also contains opinions from two non-examining physicians.  Based on his
24 review of the record, Dr. Preston Davis, Psy.D., opined that plaintiff is moderately limited in
25 carrying out detailed instructions; working with or in proximity to others without being distracted;
26 interacting appropriately with the general public; and responding appropriately to changes in the
27 work setting. *Id*. at 84-86.  He opined that plaintiff could understand, remember, and carry out
28 simple work instructions; sustain concentration, pace, and persistence consistently for two hours,

6

1   with customary breaks; interact with supervisors; perform tasks with little general public and
2   coworker contact; and adapt to a work setting that is simple and routine. *Id*. at 86. Dr. Phaedra
3   Caruso-Radin, Psy.D., concurred in Dr. Davis's opinion. *Id*. at 112-114.

4       In assessing plaintiff's RFC, the ALJ afforded "reduced weight" to Drs. Villamor and
5   MacFarland's opinions, while giving "substantial weight" to Drs. Davis and Caruso-Radin's
6   opinions. Because Dr. Villamor and Dr. MacFarland's opinions were contradicted by the non-
7   examining opinions, the ALJ was required to give specific and legitimate reasons supported by
8   substantial evidence for giving these opinions reduced weight. *See Bayliss v. Barnhart*, 427 F.3d
9   1211, 1216 (9th Cir. 2005).

10      The ALJ acknowledged that Dr. Villamor was a treating physician and had a significant
11  treatment history with plaintiff. AR 29. However, the ALJ concluded that his opinion was
12  inconsistent with the record as a whole, as well as internally inconsistent. *Id*. An ALJ may reject
13  a treating opinion that is inconsistent with other evidence in the record, including the physician's
14  own assessment and treatment notes. *Bayliss*, 427 F.3d at 1216.

15      The ALJ gave numerous examples for his finding that the opinion was unsupported by the
16  record and internally inconsistent. First, Dr. Villamor's opinion is based in part on plaintiff
17  experiencing sleep disturbances (AR 486), but treatment records consistently reflected that
18  plaintiff reported sleeping well (*id*. at 340, 363, 416, 419, 422, 469, 475, 478, 505, 508, 545, 548,
19  551, 554). Plaintiff contends, however, that treatment records also reference her reports of
20  experiencing sleeping disturbances, not just reports of sleeping well. ECF No. 10 at 20. Plaintiff,
21  however, identifies only one treatment record reflecting that she reported experiencing sleep
22  disturbances. That record is from December 2007, *id*. at 414, and predates Dr. Villamor's
23  opinion by almost 5 years. Significantly, it is inconsistent with virtually all other treatment
24  records. Accordingly, the ALJ permissibly concluded that Dr. Villamor's statement that plaintiff
25  experienced sleep disturbances is inconsistent with the record as whole. *Id*. at 29.

26      Dr. Villamor also stated that plaintiff's impairments caused decreased energy. *Id*.
27  However, as noted by the ALJ, plaintiff consistently reported that she walked daily. *Id*. As
28  plaintiff concedes, the record reflects that she does walk daily. ECF No. 10 at 20; *see, e.g.,* AR

1    416, 420, 545, 558. However, she argues that "to claim that having the physical energy to walk—
2    at an unspecified pace or distance—is necessarily inconsistent with a lack of energy or motivation
3    to do other tasks is to fail to understand the difference between physical fatigue on the one hand
4    and mental exhaustion, lack of motivation, and/or apathy on the other hand." *Id*. This argument,
5    however, fails to consider that her ability to walk every day demonstrates that she maintains the
6    motivation to engage in activities, which the ALJ logically concluded is inconsistent with a
7    finding of decreased energy.

8    Dr. Villamor also noted that plaintiff's impairments caused a pervasive lack of interest.
9    AR 486. The ALJ concluded that this finding was not consistent with plaintiff's reports that she
10   enjoyed visiting family and watching television. AR 29. Plaintiff contend that being "able to
11   visit with only her sister and father . . . speaks more to the limitations of her social contacts . . .
12   than to any positive emotional range." Plaintiff's argument merely expresses a different
13   interpretation of the evidence. The court, however, cannot find that the ALJ unreasonably
14   concluded that Dr. Villamor's finding that plaintiff had a pervasive lack of interest was
15   inconsistent with records showing that he enjoyed visiting with family and watching television.
16   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to
17   more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's
18   conclusion must be upheld.").

19   Dr. Villamor also concluded that plaintiff's ability to perform work related activities was
20   limited due to command hallucinations. AR 487. However, around the time Dr. Villamor
21   rendered his opinion, plaintiff reported that there was a reduction in hearing voices, and she
22   denied any command hallucinations. *Id*. at 446, 449,452, 469, 472, 505, 511, 554. The ALJ
23   reasonably determined that these treatment notes undermined Dr. Villamor's opinions that her
24   command hallucinations would significantly impair her ability to work.

25   Further, Dr. Villamor stated that plaintiff required hospitalization or emergency treatment
26   one to two times per year for her symptoms. AR 487. As noted by the ALJ, the only records for
27   hospitalization after the alleged onset date were for pneumonia and dehydration in September
28   2012. *Id*. at 498, 564. Plaintiff's treating physician also stated that the limitations he assessed

8

had been present plaintiff's entire life. *Id*. at 492. The ALJ logically concluded that this finding, coupled with plaintiff's demonstrated ability to work from 2003 to 2006, significantly undermined Dr. Villamor's opinions that she had impairments that would preclude employment. *Id*. at 29; 272. Similarly, the ALJ also correctly noted that despite assessing severe functional limitations, Dr. Villamor actually encouraged plaintiff to engage in more activities, such as volunteering or job training. *See* AR 418. Dr. Villamor's recommendation can reasonably be read as indicating that he did not believe plaintiff was as impaired as his assessment reflected. Further, Dr. Villamor also reported that he evaluated plaintiff on a monthly basis (*id*. at 485), but the record indicates that he evaluated plaintiff less frequently (*see id*. at 469-480, 505-513).

These inconsistencies support the ALJ's rejection of this treating opinion. The court acknowledges that the ALJ did identify a few inconsistencies that are less persuasive. The ALJ noted that although Dr. Villamor reported that plaintiff's lowest GAF score in the past year was 40, but his treatment records show that he gave plaintiff scores ranging between 40 to 50. AR 29. There is no inconsistency between the two statements. The ALJ also found that Dr. Villamor's opinion that plaintiff can manage benefits was inconsistent with his opinion that plaintiff had moderate to marked limitations in understanding, remembering, and carrying out simple tasks as well as detailed tasks. It is questionable to conclude that an individual that would have difficulty sustaining simple tasks for an 8-hour workday would also necessarily be precluded from managing his own finances

Nonetheless, in light of the numerous and legitimate inconsistencies identified by the ALJ, any reliance on these latter examples was, at most, harmless. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that a court may affirm an ALJ's decision "under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."). Accordingly, the ALJ gave specific and legitimate reasons for his rejection of Dr. Villamor's opinion.

Plaintiff next argues that the ALJ failed to give sufficient reasons for rejecting the opinion from examining physician Dr. MacFarland. ECF No. 10 at 26-29. The ALJ accorded reduced weight to Dr. MacFarland's opinion because it was based on "one-time examination, and is

9

inconsistent with the record as a whole, which shows the claimant to have improved on medications." AR 31. He found that Dr. MacFarland assessed more restrictive limitations than plaintiff's treating physician, "even though the medical evidence of record indicates that [plaintiff] has improved since Dr. Villamor's opinion." *Id*. Lastly, the ALJ noted that Dr. MacFarland stated that plaintiff has had multiple psychiatric hospitalizations," which was not supported by the record.[2] *Id*.

These reasons constitute a specific and legitimate basis for discounting Dr. MacFarland's opinion. First, while the ALJ observed that Dr. MacFarland's opinion was based on a single examination, a fair reading of the decision indicates that this statement was made to highlight that the opinion was inconsistent with extensive treatment records. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d. 1190, 1195 (9th Cir. 2003) (an ALJ may reject a medical opinion that is unsupported by the record as a whole or by objective medical evidence). Similar to Dr. Villamor, Dr. McFarland found that plaintiff's impairments caused a number of symptoms, including hearing voices, visual hallucinations, sleep disturbance, and pervasive loss of interest. *Id*. at 586. As explained above, these findings are inconsistent with plaintiff's treatment records, which showed that plaintiff experienced improvement in her symptoms. Further, based on his one examination, Dr. McFarland assessed extreme limitations that were not only inconsistent with plaintiff's treatment records, but also exceeded the limitations assessed by plaintiff's treating physician. This further inconsistency was a proper consideration in giving reduced weight to Dr. MacFarland's examining opinion. *See* 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Lastly, Dr. MacFarland reported that plaintiff had "multiple hospitalizations for full blown psychotic episodes and several suicide attempts." AR 580. However, as noted by the ALJ, plaintiff only reported one psychiatric hospitalization in 1994, and there is no evidence that she was

---

[2] The ALJ also observed that he was not was not bound by Dr. MacFarland's conclusion that plaintiff was not able to work a 40-hour workweek, as that opinion went to the ultimate issue of disability. AR 31; *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

subsequently hospitalized for any psychological impairment. *See, e.g.*, *id.* at 416 (treatment note reflecting report of one psychiatric hospitalization in 1994). Thus, the ALJ logically concluded that Dr. MacFarland's report overstated the severity of plaintiff's mental impairment.

Accordingly, the ALJ also gave legally sufficient reasons for discounting this treating opinion.

### B. The ALJ Provided Sufficient Reasons for Discounting Plaintiff's Credibility

Plaintiff also contends that the ALJ erred by failing to set forth clear and convincing reasons for discrediting her subjective complaints. ECF No. 10 at 29-34.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-347. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

/////

1       Plaintiff testified that she suffers from depression and that she hears voices every day.  AR
2  63.  She reported that her depression causes her to sleep all day and to not be in a good mood.  *Id*.
3  The voices she hears usually are "murmuring," but sometimes they are more aggravated and tell
4  her things "like your father's dead."  *Id*. at 63-64.  She usually goes to be around 10 or 11 p.m.,
5  and will sleep until noon.  *Id*. at 65.  On a typical day she sleeps, does homework, checks the
6  mail, and, on the weekends, she visits her sister.  *Id*. at 64.  She testified that she would be too
7  depressed to go to work, and that she would end up sleeping in.  *Id*.  Plaintiff stated that she took
8  Risperdal for her auditory hallucinations, which "works pretty well" and caused no side effects.
9  *Id*.  She also explained that she did not take any depression medication, because her depression is
10 caused from hearing voices.  *Id*. at 66.

11      The ALJ found that plaintiff's allegations of debilitating impairments were not fully
12 credible.  *Id*. at 27.  He provided multiple reasons for reaching this conclusion.  First, the ALJ
13 found that plaintiff's allegations were inconsistent with her reported daily activities.  *Id*. at 27.
14 An ALJ may consider activities of daily living in assessing a plaintiff's credibility.  *Burch v.*
15 *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  However, a plaintiff's daily activities have a
16 bearing on the plaintiff's credibility only where the level of activity is inconsistent with the
17 alleged limitations.  *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

18      As noted by the ALJ, the record shows that plaintiff walked daily, rode her bicycle,
19 provided her own personal care, performed simple household chores, prepared simple meals,
20 went out alone, went grocery shopping, and handled money.  AR 27, 221-222, 341.  These daily
21 activities are inconsistent with plaintiff's allegations that her impairments cause her to sleep all
22 day.

23      The ALJ also noted that the record establishes that plaintiff's alleged disabling
24 impairments were present at approximately the same level of severity prior to the alleged onset
25 day, and that there is little evidence of worsening of her symptoms.  AR 27.  The ALJ found that
26 "[t]he fact that the impairments did not prevent the claimant from working [prior to the onset
27 date] strongly suggest that they would not currently prevent work."  *Id*.  Further, the ALJ also
28 noted that there is evidence that plaintiff stopped working due to business being slow, which is

unrelated to her impairment. *Id*. As discussed above, plaintiff's treating physicians indicated that the limitations he assessed in November 2012 existed throughout plaintiff's life. AR 492. However, the record reflects that plaintiff sustained work for several years despite her limitations. *Id*. at 272. Plaintiff's ability to work despite her limitations was a proper consideration in reducing her credibility.[3] *Light*, 119 F.3d at 792 (in assessing credibility, an ALJ may consider work records).

The ALJ also discounted plaintiff's credibility based on inconsistent statements. Plaintiff testified that she hears voices every day, sleeps all day, and is generally not in a good mood. AR 63-64. However, treatment records reflected that she reported doing okay, there was a reduction in hearing voices, and that she enjoys engaging in several activities, including walking, riding her bike, and visiting family. *See, e.g., id*. at 469-471, 478, 505-507, 542-550). Plaintiff's testimony that she is generally in a poor mood and spent the majority of her day sleeping drastically contrasted reports she made to her treating physician. These inconsistencies constitute a clear and convincing basis for rejecting plaintiff's allegations. *Smolen*, 80 F.3d at 1284 (an ALJ may discredit testimony that is inconsistent with prior statements or other evidence).

Lastly, the ALJ questioned the veracity of plaintiff's allegations of severe depression. *Id*. at 28. As noted by the ALJ, plaintiff testified that the main reason she is not able to work is because of her depression. AR 65-66. She further stated that she did not take any depression medication because her depression was caused by hearing voices. However, she also testified that she takes Risperdal for her auditory hallucination, which worked pretty well and did not cause any side effect. *Id*. at 64. Moreover, the ALJ observed that the medical records indicate
/////

---

[3] Plaintiff takes issue with the ALJ's finding that she left work for reasons unrelated to her mental impairments, arguing that the ALJ mischaracterizes her testimony. ECF No. 63. Plaintiff testified that she quit working at Burger King after six years because "business was slow and that I couldn't keep up." AR 63. Given that plaintiff maintained this job for 6 years despite her limitations, the court finds the ALJ's interpretation of the evidence reasonable. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.")

that plaintiff experienced a reduction in hearing voices with her medication. *Id*. at 28. The ALJ concluded that this evidence would suggest that plaintiff's depression was controlled. *Id*.

The ALJ's reasoning is sound. Given that plaintiff's alleged depression was caused from auditory hallucinations, which were improved with medication, one would expect improvement in depression symptoms.

Based on the foregoing, the court finds that the ALJ gave several clear and convincing reasons for discounting plaintiff's credibility.

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. The Commissioner's cross-motion for summary judgment is granted; and
3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 30, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE